# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

MICHAEL MILLER,         )
                              )
           Petitioner,     )
                              )
v.                            )     Case No. 4:20 CV 726 RWS
                              )
MICHELE BUCKNER,[1]    )
                              )
         Respondent.    )

## MEMORANDUM AND ORDER

This case is before the Court on the amended petition[2] of Michael Miller for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On February 27, 2015, a jury convicted Miller of first degree murder and armed criminal action (Case No. 1222-CR06656-01).  On April 17, 2015, the trial court sentenced him to concurrent sentences of life imprisonment without the possibility of parole and life imprisonment.  Miller's conviction and sentence were affirmed on appeal.  *State v. Miller*, 508 S.W.3d 170 (Mo. Ct. App. 2016).

Miller sought discretionary relief in the Missouri Supreme Court.  The Missouri Supreme Court denied his application for transfer on January 31, 2017,

---

[1] Michele Buckner is the current superintendent of South Central Correctional Center and, as petitioner's custodian, is substituted as the proper respondent.

[2] The original petition is superseded by the filing of the amended petition and will be denied as moot.  *In re Wireless Tel. Fed. Cost Recovery Fee Litig.*, 396 F.3d 922, 928 (8th Cir. 2005).

and the mandate issued on February 10, 2017.  Miller did not file a petition for writ
of certiorari in the United States Supreme Court.

On May 4, 2017, Miller filed a timely *pro se* motion for post-conviction relief
pursuant to Missouri Supreme Court Rule 29.15.  Retained counsel subsequently
filed an amended motion on October 11, 2017.  The motion court held an
evidentiary hearing on March 26, 2018.  Miller was not present for the hearing.
After the evidentiary hearing, the motion court denied post-conviction motion on
April 5, 2018.

The Missouri Court of Appeals Eastern District affirmed the denial of Rule
29.15 relief on August 27, 2019.  ECF 14-12.  The mandate issued on September
19, 2019.  The instant petition was filed on June 3, 2020.  Respondent does not
argue that the petition is untimely filed.

In his amended petition for habeas corpus, Mitchell, through counsel, asserts
nine grounds for relief.  I will deny Miller's petition for writ of habeas corpus for
the following reasons.

## Background

The Missouri Court of Appeals described the factual and procedural
background of this case as follows:

> On the night of December 4, 2012, Shanece Nicks, her boyfriend, and her
> brother, who was the Victim here, were attending a concert when Nicks's
> cousin, Tanjanik Lomelli, called Nicks and asked her to come pick Lomelli
> up because Lomelli and Chantay Clark had been in an argument and Clark

told Lomelli she needed to move out of Clark and Miller's home on Michigan Avenue in the City of St. Louis.  Nicks's boyfriend drove Nicks and Victim to Clark and Miller's home and they arrived just after midnight. When they arrived, Lomelli, Clark, and Miller were all outside and Nicks and Victim got out of the car to help Lomelli move her things out of the house.  Clark's niece, Collier, was also staying at Clark and Miller's home that night and she helped carry one of Lomelli's bags outside but then went back into the house for the rest of the night.

When Victim tried to enter the house to get some of Lomelli's belongings, Clark objected because she did not know him. Victim, who had been drinking, called Clark a "bitch" and a heated argument ensued between Victim, Clark, and Miller, who came to Clark's defense. Nicks, who was Clark's friend, interjected and broke up the argument and after the remainder of Lomelli's things were gathered, Nicks, her boyfriend, and Lomelli drove to Nicks's home about a mile away. Victim, however, decided to walk to Nicks's home. He did not make it. Around 12:42 a.m., when Victim reached the intersection of Bates and Louisiana, Victim was shot six times and killed.

The police arrived around 1 a.m. and began interviewing witnesses. Several witnesses identified the shooter as a black male wearing dark clothing who fled the scene in a white SUV with running board lights. The police also contacted Victim's sister, Nicks, and she informed them about the argument that had occurred earlier that morning between Victim, Miller, and Clark. The police drove to Miller and Clark's home and found a white SUV parked in the back on a parking pad. Two witnesses identified the SUV as the vehicle that fled the crime scene early that morning, and one of those witnesses later identified Miller as the shooter in a lineup and at trial.

Miller was charged with one count of murder in the first degree and one count of armed criminal action arising out of the death of Victim. Miller was tried by a jury and found guilty of both charges. Miller was sentenced to life imprisonment without the possibility of parole for the murder in the first degree charge and a concurrent life sentence for the armed criminal action charge.

ECF 28-1.

## Discussion

In his amended petition for writ of habeas corpus, Miller, through counsel,

raises nine grounds for relief:

(1) The trial court erred by overruling petitioner's motion to exclude a witness;

(2) The trial court erred by prohibiting defense counsel from effectively cross-examining two witnesses;

(3) The trial court erred in denying petitioner's motion for judgment of acquittal;

(4) The trial court erred by failing to read two instructions to the jury prior to opening statements;

(5) The trial court erred in overruling petitioner's motion to suppress and admitting evidence obtained from a warrantless seizure of petitioner's vehicle;

(6) Trial counsel was ineffective for failing to object to the trial court's failure to read two jury instructions prior to opening statements;

(7) Trial counsel was ineffective for failing to present the testimony of an alibi witness;

(8) Trial counsel was ineffective for failing to object to an improper closing argument made by the State; and

(9) Trial counsel's cumulative errors resulted in ineffective assistance of counsel.

Miller requests an evidentiary hearing on his claims.

When reviewing a claim on the merits, federal habeas relief can be granted

only if the state court adjudication "resulted in a decision that was contrary to, or

4

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); *see Williams v. Taylor*, 529 U.S. 362, 379 (2000).  The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court.  *Id.* at 380–83.

"A state court's decision is 'contrary to' clearly established Supreme Court precedent when it is opposite to the Supreme Court's conclusion on a question of law or different than the Supreme Court's conclusion on a set of materially indistinguishable facts."  *Carter v. Kemna*, 255 F.3d 589, 591 (8th Cir. 2001) (citing *Williams,* 529 U.S. at 412–13).  "A federal court may grant relief under the 'unreasonable application' clause if the state court correctly identified the governing legal principle, but unreasonably applied it to the facts of the particular case."  *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  "A state court's application of clearly established federal law must be objectively unreasonable, and not merely incorrect, to warrant the granting of a writ of habeas corpus."  *Jackson*, 651 F.3d at 925 (citing *Bell*, 535 U.S. at 694).

Finally, when reviewing whether a state court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the state court proceedings, state court findings of basic, primary, or historical facts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007).  "[E]ven erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'"  *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).

The federal court is "bound by the AEDPA to exercise only limited and deferential review of underlying State court decisions."  *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003).  To obtain habeas relief from a federal court, the petitioner must show that the challenged state court ruling "rested on an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (cleaned up).  This standard is difficult to meet.  *Id.* at 357-58.

A.    Ground One: Failure to Exclude Witness

The entirety of Miller's first claim for relief is set out in his amended petition as follows:

> The trial court erred and abused its discretion in overruling my motion to exclude Miesha Collier's testimony because the State's late endorsement of Ms. Collier as a witness violated Rule 25.03(A)(l), surprised the defense, and resulted in fundamental unfairness by depriving me of a meaningful

opportunity to prepare a strategy to address highly prejudicial testimony that provided the jury with evidence of my opportunity to commit the charged offenses, corroborated State's witnesses' credibility and the accuracy of Leah Dunlap's identification of me as the shooter, and refuted the defense. The trial court's error denied me my rights to due process of law, to present a defense, and to a fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

ECF 8 at 18. In his traverse, Miller claims that "the substance of Claim 1 was adequately addressed in the underlying petition. It would serve no useful purpose to rehash these arguments here." ECF 23 at 18. Miller does not explain how the admission of this evidence violated any of his constitutional rights.[3]

A claim that the state court erred in allowing Miesha Collier (the niece of Miller's girlfriend Chantay Clark) to testify because the State's pretrial disclosure of her as a witness was untimely under Missouri Supreme Court Rule 25.03 is non-

---

[3] Although *Brady* is not mentioned, respondent speculates that Miller may be trying to bring a due process claim under *Brady v. Maryland*, 373 U.S. 83 (1963). "Under *Brady v. Maryland*, suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *United States v. Pendleton*, 832 F.3d 934, 940 (8th Cir. 2016) (cleaned up). This Court is not required to speculate as to the nature of the claims being brought by Miller, particularly because he is represented by counsel, who chose not to address respondent's *Brady* arguments despite filing a traverse.

Even if such a claim were raised and *Brady* could be construed to apply in this situation, it would be procedurally defaulted as it was not litigated in state court. It is also meritless, as *Brady* does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial. *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005). The state court found that Miller was not prejudiced by the untimely disclosure because he possessed her prior statement and knew of her involvement in the case, and Collier testified consistently with her prior statements. ECF 28-1. These findings are entitled to deference, *see* 28 U.S.C. § 2254(d)(2), and foreclose any *Brady* claim.

cognizable on federal habeas review.  It is well-established that "federal habeas corpus relief does not lie for errors of state law" and that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (cleaned up).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68; s*ee also Lee v. Norris*, 354 F.3d 846, 847 (8th Cir. 2004) ("[A] mere violation of state law . . . is not cognizable in federal habeas.").  Ground One of Miller's habeas petition is denied.

B.     Ground Two: Cross-Examination of Witnesses

Miller's second ground for relief is set out in its entirety as follows:

The trial court erred and abused its discretion in prohibiting my defense counsel from cross-examining Miesha Collier and Detective Lon Ray about a conversation they had during Ms. Collier's police interview, in which Detective Ray attempted to deliberately mislead Ms. Collier by telling her that her cousin, Darius Clark, a nonverbal autistic person, had told him something different than what Ms. Collier had told him, in that: the State elicited the statements that Ms. Collier subsequently made to Detective Ray as testimony at trial; cross-examination on the coercive circumstances surrounding the making of Ms. Collier's statements to Detective Ray was relevant to the jury's determination of the veracity of the statements, as well as the veracity of Ms. Collier's testimony at trial; and, the exclusion of such cross-examination prejudiced me by depriving me of a fair trial. There is a reasonable probability that but for the error, the outcome of my trial would have been different. The trial court's error denied me my rights to due process of law, to confrontation and cross-examination, and to a fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

ECF 8 at 18.  Miller provides no argument or legal authority addressing how his constitutional rights were allegedly violated, claiming in his traverse that "the substance of Claim 2 was adequately addressed in the underlying petition."  ECF 23 at 18.

Collier was staying with her aunt (Clark) and Miller at their residence on December 4 and 5, 2012, and she assisted Lomelli in removing one bag of her belongings from the residence after Lomelli was told to leave on December 4. (ECF 14-2 at 603-06).  Collier was outside when Lomelli's friend Shanece Nicks, the victim (Nicks's brother), and Nicks's then-boyfriend arrived to pick up Lomelli and her belongings.  (ECF 14-2 at 606–09).  Collier testified on direct examination that after she carried one of Lomelli's bags, she went back inside; she claimed that she did not witness any argument involving the victim, Clark, and Miller and that she had no knowledge of what occurred outside the residence.  (ECF 14-2 at 609–11).  She testified that she did not see either Clark or Miller re-enter the residence that evening, though Miller was inside the residence when police arrived later that day.  (ECF 14-2 at 612–13).

During defense counsel's cross-examination, Collier confirmed that following the victim's murder she was interviewed at the police station by a detective. (ECF 14-2 at 613–14). The prosecutor objected on hearsay grounds when defense counsel asked Collier to repeat something the detective had told her

during the interview.  (ECF 14-2 at 614).  During a bench conference, defense

counsel said that he wanted to elicit testimony showing that the detective attempted

to mislead Collier during the interview, but that Collier "challenged him on that":

> [Miller's Counsel]: The detective, I believe he will say he was a little
> frustrated with how the interview was going with Miesha [Collier].
>
> The Court: I can imagine.
>
> [Miller's Counsel]: And he asks her, tells her that Darius, who was another
> person in the house . . . . That Darius told Detective Ray something different.
> And [Collier] challenged him on that and asked Detective Ray if he really
> talked to Darius, and he said yes. And [Collier] then challenged the cop and
> said Darius doesn't talk. He's a nonverbal autistic person.  And then
> Detective Ray says, oh, really. Are you sure? You've never had a
> conversation with him? So it's the idea that Detective Ray lied in his
> interrogation of [Collier]. I can either get it out from [Collier] or I can get it
> out from Detective Ray.
>
> [The Prosecutor]: Well, be my position I'm not sure he's entitled to.  Case
> law says very clear police officers are allowed to use fabrications in
> questioning suspects or witnesses in order to challenge their version and try
> to get the truth.  So, you know, if what counsel wants to do is to somehow
> imply to this jury that what Detective Ray did is illegal or wrong, that is
> simply not true under the law. And I think doing that would give them a
> false impression.

(ECF 14-2 at 615–16).  Defense counsel responded that the detective's attempt to

mislead her "goes to the entire credibility of [Collier's] statement" since the

detective "lie[d] to her in an attempt to get her to talk."  (ECF 14-2 at 617).

Counsel further argued that "after she calls him on it, then they open up the rest of

the conversation," and that the jury was "entitled to know how the conversation

went between these two people."  (ECF 14-2 at 617).

10

The court ruled that defense counsel was limited to asking Collier what she said to the detective, but could not ask her about the detective's interrogation methods.  (ECF 14-2 at 619–20).  Defense counsel then made an offer of proof regarding this matter:

> [Miller's Counsel]: So what she would say in that scenario is that she talked about Darius, who is another person that lived in the house at the time. That is Chantay's [Clark's] son, and that he is a nonverbal.
>
> The Court: He has autism?
>
> [Miller's Counsel]: Yes. Nonverbal autistic person and . . .
>
> The Court: He's a 20 year old?
>
> [Miller's Counsel]: Mid-20s now. And she told Detective Ray that he does not talk and would not have said anything to him about this incident.

(ECF 14-2 at 620).  Following the offer of proof, the court clarified that defense counsel could not ask Collier to repeat what the detective had told her about talking to Darius, but that the issue "may come up later, and we'll talk about it." (ECF 14-2 at 622).

Defense counsel then elicited testimony from Collier that Darius, who was Clark's biological son, also lived in the same residence with Clark and Miller, that Darius was a nonverbal autistic person who did not "speak at all," and that Darius was discussed during Collier's interview with Detective Ray.  (ECF 14-2 at 625–26).

After Detective Ray testified on direct examination, the court revisited the issue and stated that it would not allow the defense to cross- examine the detective on a collateral matter regarding the detective's interrogation technique or whether the detective misled Collier during the interview. (ECF 14-2 at 662).  The court ruled that this line of inquiry was neither relevant nor material, and it noted that "the United States Supreme Court has allowed false statements to be made by interrogating officers when questioning both witnesses and primary suspects in criminal matters." (ECF 14-2 at 662).  The court determined that an inquiry on this type of collateral matter "would be confusing to the jury." (ECF 14-2 at 662).

Defense counsel then made a further offer of proof about what his proposed cross-examination of Detective Ray would reveal:

> I believe where you left, Judge, in the summary was that Detective Ray had claimed to have spoken to Darius. I believe the context of it is Miesha [Collier] makes some reference to, I don't know anything. You're not going to get anything out of me. I don't know what happened. And Detective Ray says, "Well, that's not what Darius told me."
>
> And then [Collier] challenges Detective Ray by saying, "You talked to Darius?" Detective Ray says yes. And she says something to the effect of, "Are you telling the truth? Is that for real?" He says yes, and she then tells him, "He's a nonverbal. He doesn't talk."
>
> And then Detective Ray responds to that by some statement regarding doesn't he do sign language. She says no. And then he says, Oh, I was just testing you to see if you really knew. You do know something.
>
> There's sort of this back and forth that him and Miesha have where she says she doesn't know anything. And he says, well, you must know something about something.

(ECF 14-2 at 663–64).  Miller's counsel argued that the jury was entitled to "understand the context of the interrogation," that Collier's statement followed her catching the detective in a lie, and that the proposed testimony was relevant to her "state of mind" and "subsequent conduct."  (ECF 14-2 at 664–65).  The trial court disagreed and refused to allow the cross-examination.

Miller raised this issue on direct appeal.  The state court rejected this claim as follows:

> In point II, Miller argues that the trial court erred in not allowing him to cross-examine Collier regarding a police interrogation tactic that Miller contends was deceptive and undermined the voluntariness and veracity of Collier's testimony. The trial court is vested with broad discretion in deciding the permissible scope of cross-examination that is reviewed on appeal for an abuse of discretion. *State v. Oates*, 12 S.W.3d 307, 313 (Mo. banc 2000). Because the record demonstrates that not only was Collier not deceived by any of the police interrogation tactics but also that her testimony was fully consistent in all relevant aspects with her prior statements, this point is denied.

ECF 28-1.

Generally, in the habeas context, "[q]uestions regarding admissibility of evidence are matters of state law."  *Rousan v. Roper*, 436 F.3d 951, 958 (8th Cir. 2006) (cleaned up).  "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process."  *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006).

Therefore, to succeed, Miller "must show 'that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.'"  *Rousan*, 436 F.3d at 958–59 (cleaned up).

      The Sixth Amendment guarantees a criminal defendant the "right to be confronted with the witnesses against him," including "the right to conduct reasonable cross-examination."  *Olden v. Kentucky*, 488 U.S. 227, 231 (1988). Pursuant to this right, a criminal defendant must be given "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  *Sittner v. Bowersox*, 969 F.3d 846, 850 (8th Cir. 2020) *(*cleaned up) (citing *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).  Accordingly, the right to cross-examination "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (quoting *Rock v. Arkansas*, 483 U.S. 44, 55 (1987)).  Any "[r]estrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrary or disproportionate to the purposes they are designed to serve.'"  *Id.* at 151  (quoting *Rock*, 483 U.S. at 56).

      The appellate court's determination that Miller was not entitled to relief on this claim is not contrary to, or an unreasonable application of, clearly established federal law as its factual findings that "Collier [was] not deceived by any of the

police interrogation tactics [and] her testimony was fully consistent in all relevant aspects with her prior statements" are not an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Given that there is no evidence that Collier was coerced into making a statement and her testimony was consistent with her prior statement, s*ee Lynumn v. Illinois,* 372 U.S. 528, 534  (1963) (a statement is not voluntary when obtained under circumstances that overbear the speaker's will at the time it is given), the evidence of Ray's interrogation tactics was not relevant to bias or motive for impeachment purposes.

Moreover, it was properly excluded as an improper attempt to confuse and mislead the jury, as statements obtained through subterfuge are admissible as long as the deception does not relate to the nature of *Miranda* rights.  *See, e.g., Illinois v. Perkins,* 496 U.S. 292, 297 (1990) ("Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda'*s concerns").  Here, there is no evidence that Collier's statement was obtained through subterfuge as Collier was not misled and instead pointed out Ray's deception during her interview.  Miller cannot meet the difficult standard of showing the state court ruling "rested on an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Metrish*, 569 U.S. at 357-58 (cleaned up).  Under these

circumstances, the appellate court's decision to deny relief on Ground Two of the

petition is entitled to deference.  Ground Two of Miller's habeas petition is denied.

C.      Ground Three: Sufficiency of the Evidence

       In Ground Three, Miller argues that he was denied due process and a fair

trial when the trial court overruled his motion for judgment of acquittal because

there was insufficient evidence of deliberation to find him guilty first degree

murder and armed criminal action.

       On direct appeal, the Missouri Court of Appeals denied this claim as

follows:

> We review a challenge to the sufficiency of the evidence only to determine
> whether the State introduced sufficient evidence at trial for a reasonable juror
> to have found that each element of the offense was established beyond a
> reasonable doubt. *State v. Bateman*, 318 S.W.3d 681, 686-87 (Mo. banc
> 2010).  This is not an assessment of whether the court believes that the
> evidence at trial established guilt beyond a reasonable doubt but rather a
> question of whether, in light of the evidence most favorable to the State, any
> rational fact-finder could have found the essential elements of the crime
> beyond a reasonable doubt. *State v. Nash*, 339 S.W.3d 500, 509 (Mo.banc
> 2011).  All evidence favorable to the State and reasonable inferences drawn
> therefrom are accepted as true, and all evidence and inferences to the contrary
> are disregarded. *Id*.  Great deference is allotted to the trier of fact and we will
> not reweigh the evidence. *Id.*
>
> A person commits the offense of murder in the first degree if he or she
> knowingly causes the death of another person after deliberation upon the
> matter. § 565.020.  Deliberation means cool reflection for any length of time
> no matter how brief. § 565.002(3).  The deliberation element serves to ensure
> that the jury believes the defendant acted deliberately, consciously, and not
> reflexively. *State v. Nathan*, 404 S.W.3d 253, 266 (Mo.banc 2013).
> Deliberation is ordinarily established through the circumstances surrounding
> the crime. *Zink v. State*, 278 S.W.3d 170, 180 (Mo.banc 2009).  For instance,
> deliberation may be inferred when the victim has received multiple gunshot

wounds or from the fact that a defendant left the scene immediately after the shooting without checking on the victim or procuring aid. *State v. Samuels*, 965 S.W.2d 913, 922-23 (Mo.App.W.D. 1998).

In light of these authorities, we find that the trial court did not err in denying Miller's motion for judgment of acquittal at the close of the evidence because the State introduced ample evidence to establish that Miller deliberated before causing Victim's death. Indeed, the evidence shows that Miller and Victim got into a heated argument at Miller's house and that as a result, Victim decided to walk to his sister's house to calm down. Miller then got into his vehicle, located Victim, and shot him six times in the street before fleeing the scene and leaving Victim to die. This was ample evidence from which the jury could, and in fact, did find that Miller had deliberated before murdering Victim. Point denied.

ECF 28-1.

The Due Process Clause prohibits the conviction of an accused "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In the context of deciding a § 2254 claim, the court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Evans v. Luebbers*, 371 F.3d 438, 441 (8th Cir. 2004). The scope of habeas review of such a claim is "extremely limited." *Skillicorn v. Luebbers*, 475 F.3d 965, 977 (8th Cir. 2007). This means that "a reviewing court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of

fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (cleaned up).

This Court may grant federal habeas relief only if the Missouri Court of Appeals' determination that the evidence satisfied the sufficiency of evidence standard was "both incorrect and unreasonable" under *Jackson*. *Garrison v. Burt*, 637 F.3d 849, 855 (8th Cir. 2011).

Here, the state court reasonably determined that, viewing the evidence in the light most favorable to the verdict, there was sufficient evidence of deliberation to support Miller's convictions.   The state court considered the claim using the correct legal standard by applying *State v. Bateman*, 318 S.W.3d 681, 686-7 (Mo. banc 2010), which cites *Jackson*.  After examining the state law definition of deliberation, the court concluded that there was sufficient evidence to support the verdict given the evidence of the heated argument between Miller and the victim, Miller's decision to leave the residence and follow the victim, then shoot him six times before fleeing the scene and leaving him to die in the street.  Although Miller argues that this determination is unreasonable because there was no evidence that he and the victim knew each other before the incident which led to the murder, the state court's determination that the facts were sufficient to support the verdict is a reasonable one that should receive deference under 28 U.S.C. § 2254(d), particularly where a prior relationship is not necessary to establish deliberation.

In denying this ground on appeal, the Missouri Court of Appeals correctly identified the governing legal standards, and its determination that there was sufficient evidence to convict Miller was not an incorrect or unreasonable application of *Jackson*. *See* 28 U.S.C. § 2254(d)(1). As the appellate court's determination also did not involve an unreasonable determination of the facts in light of the evidence presented in the  state court proceedings, *see* 28 U.S.C. § 2254(d)(2), the decision is entitled to deference.

Miller's arguments that the appellate court should have decided the factual and legal issues differently are insufficient to meet the difficult standard of showing the state court ruling "rested on an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Metrish*, 569 U.S. at 357-58 (cleaned up). Ground Three of Miller's habeas petition is denied.

E.     Ground Four: Jury Instructions

Miller's fourth ground for relief is as follows:

The trial court plainly erred, causing manifest injustice or a miscarriage of justice, in failing to read Instruction No. 2, based on MAI-CR 3d 302.02, to the jury prior to the commencement of opening statements, and in failing to read Instruction No. 14 based on MAI- CR 3d 302.06, before the jury retired to deliberate, because the trial court failed to comply with the Missouri Approved Instructions and its Notes on Use, failed to give the jury sufficient guidance on how to view opening statements, closing arguments, questions, and remarks of counsel, all of which are not evidence, and thereby, affected the jury's verdict. The trial court's error deprived me of my rights to due

19

process of law and a fair trial as guaranteed by the Fifth and Fourteenth
Amendments to the United States Constitution.

ECF 8.

In his traverse, Miller argues that the trial court violated Missouri's
Approved Instructions and that he was prejudiced as a result.  ECF 23 at 24-25.  To
the extent Miller's claim is grounded in a violation of Missouri law, it is not
cognizable in federal habeas proceedings and is denied.  *See Engle v. Isaac*, 456
U.S. 107, 119 (1982); *Estelle*, 502 U.S. at 67.

Moreover, as a general rule jury instructions do not form a basis for habeas
corpus relief.  *See, e.g., Dietz v. Solem,* 640 F.2d 126, 130 (8th Cir.1981);
*Brouillette v. Wood,* 636 F.2d 215, 218 (8th Cir.1980).  Habeas relief is available
when a petitioner establishes that improper instructions resulted in a "fundamental
defect which inherently results in a complete miscarriage of justice [or] an
omission inconsistent with the rudimentary demands of fair procedure."  *Williams
v. Lockhart*, 736 F.2d 1264, 1267 (8th Cir. 984) (cleaned up).  The burden of
demonstrating that errors in jury instructions were sufficiently prejudicial to
"support a collateral attack on the constitutional validity of a state court's judgment
is even greater than the showing required to establish plain error on direct appeal."
*Henderson v. Kibbe,* 431 U.S. 145, 154 (1977).  Miller must show that the alleged
error so infected the entire trial that he was deprived of his right to due process.
*Cupp v. Naughten,* 414 U.S. 141, 147 (1973).

20

The Missouri Court of Appeals denied Miller's argument on plain error

review as follows:

> Miller concedes that he did not preserve this point of error but asks us to review for plain error his contention that the trial court failed to properly read to the jury two mandatory instructions. Specifically, Miller claims that the trial court did not read to the jury MAI-CR 3d 302.02 until after the opening statements were made when it should have been read before opening statements, and that the trial court failed altogether to read MAI-CR 3d 302.06 before sending the jury to deliberate. Finding no manifest injustice or miscarriage of justice, the point is denied.

> Plain error lies where we find that manifest injustice or a miscarriage of justice has resulted from trial court error. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo.banc 2009). Generally, however, we have discretion to review for plain error only where the appellant asserting error establishes facially substantial grounds for believing that the trial court's error was evident, obvious, and clear, and that manifest injustice or a miscarriage of justice has resulted. *State v. Jones*, 427 S.W.3d 191, 195 (Mo.banc 2014). Instructional error seldom constitutes plain error. *State v. Myles*, 479 S.W.3d 649, 655 (Mo.App.E.D. 2015). Plain error results when the trial court has failed to instruct the jury and it is apparent to the appellate court that the instructional error affected the jury's verdict and caused manifest injustice or a miscarriage of justice. *Id.* at 655-56. It is the defendant's burden to show plain error in this context. *Id.* at 656.

> Rule 28.02 provides that "[i]n every trial for a criminal offense the court shall instruct the jury in writing upon all questions of law arising in the case that are necessary for their information in giving the verdict." In every criminal trial, the judge is required to read three introductory pattern instructions as soon as the jury is sworn. *State v. Robinson*, 484 S.W.3d 862, 865 (Mo.App.E.D. 2016). First, the court is required to read MAI-CR 3d 300.06, which provides as follows:

>> This case will proceed in the following order:

>> First, the Court will read to you two instructions concerning the law applicable to this case and its trial. Next, the attorney for the state must make an opening statement outlining what the attorney expects the state's evidence will be. The attorney for the defendant is not required to make an

opening statement then or at any other time. However, if the attorney chooses to do so, he may make an opening statement after that of the state, or the attorney may reserve his opening statement until the conclusion of the state's evidence.

Evidence will then be introduced.

At the conclusion of all of the evidence, further instructions in writing concerning the law will be read to you by the Court, after which the attorneys may make their arguments. You will then be given the written instructions of the Court to take with you to your jury room. You will go to that room, select a foreperson, deliberate, and arrive at your verdict.

(If you find the defendant guilty in this first stage of the trial, a second stage of the trial will be held. During the second stage, additional instructions will be read to you by the court, additional evidence may be presented, and the attorneys will make their arguments as to punishment. With the additional instructions of the court, you will return to the jury room, deliberate, and determine the punishment to be assessed.)

Sometimes there are delays or conferences out of your hearing with the attorneys about matters of law. There are good reasons for these delays and conferences. The Court is confident that you will be patient and understanding. We will have recesses from time to time.

The following two instructions of law are for your guidance in this case. The two of them, along with other instructions in writing read to you at the close of all the evidence, will be handed to you at that time to take to your jury room.

Next, the court is required to read MAI-CR 3d 302.01 ("Instruction No. 1"), which provides as follows:

Those who participate in a jury trial must do so in accordance with established rules. This is true of the parties, the witnesses, the lawyers, and the judge. It is equally true of jurors. It is the court's duty to enforce these rules and to instruct you upon the law applicable to the case. It is your duty to follow the law as the court gives it to you.

However, no statement, ruling, or remark that I may make during the trial is intended to indicate my opinion of what the facts are. It is your duty to determine the facts and to determine them only from the evidence and the reasonable inferences to be drawn from the evidence. In your determination of the facts, you alone must decide upon the believability of the witnesses and the weight and value of the evidence.

In determining the believability of a witness and the weight to be given to testimony of the witness, you may take into consideration the witness' manner while testifying; the ability and opportunity of the witness to observe and remember any matter about which testimony is given; any interest, bias, or prejudice the witness may have; the reasonableness of the witness' testimony considered in the light of all of the evidence in the case; and any other matter that has a tendency in reason to disprove the truthfulness of the testimony of the witness.

It is important for you to understand that this case must be decided only by the evidence presented in the proceedings in this courtroom and the instructions I give you. The reason for this is that the evidence presented in court is reviewed by the lawyers and the court, and the lawyers have the opportunity to comment on, or dispute, evidence presented in court. If you obtain information from other places, the lawyers do not have the opportunity to comment on or dispute it. Fairness and our system of justice require giving both sides the opportunity to view and comment on all evidence in the case. It is unfair to the parties if you obtain information about the case outside this courtroom.

Therefore, you should not visit the scene of any of the incidents described in this case, nor should you conduct your own research or investigation. For example, you should not conduct any independent research of any type by reference to textbooks, dictionaries, magazines, the Internet, a person you consider to be knowledgeable or any other means about any issue in this case, or any witnesses, parties, lawyers, medical or scientific terminology, or evidence that is any way involved in this trial.

You should not communicate, use a cell phone, record, photograph, video, e- mail, blog, tweet, text or post anything about this trial or your thoughts or opinions about any issue in this case to any person. This prohibition on communication about this trial includes the use of the Internet, [*List popular websites such as "Facebook," MySpace," "Twitter."*], or any other personal or public website.

Faithful performance by you of your duties as jurors is vital to the administration of justice. You should perform your duties without prejudice or fear, and solely from a fair and impartial consideration of the whole case. Do not make up your mind during the trial about what the verdict should be. Keep an open mind until you have heard all of the evidence and the case is given to you to decide.

(Each of you may take notes in this case but you are not required to do so. I will give you notebooks. Any notes that you take must be in those notebooks only. You may not take notes out of the courtroom before the case is submitted to you for your deliberations. No one will read your notes while you are out of the courtroom. If you choose to take notes, remember that note-taking may interfere with your ability to observe the evidence and witnesses as they are presented.

Do not discuss or share your notes with anyone until you begin your deliberations. During deliberations, if you chose to do so, you may use your notes and discuss them with other jurors. Notes taken during trial are not evidence. You should not assume that your notes, or those of other jurors, are more accurate than your own recollection or the recollection of other jurors.

After you reach your verdict, your notes will be collected and destroyed. No one will be allowed to read them.)

Then the court reads MAI-CR 302.02 ("Instruction No. 2"), which states as follows:

You must not assume as true any fact solely because it is included in or suggested by a question asked a witness. A question is not evidence, and may be considered only as it supplies the meaning to the answer.

From time to time the attorneys may make objections. They have a right to do so and are only doing their duty as they see it. You should draw no inference from the fact that an objection has been made.

If the court sustains an objection to a question, you will disregard the entire question and should not speculate as to what the answer of the witness might have been. The same applies to exhibits offered but excluded from the evidence after an objection has been sustained. You will also disregard any

answer or other matter which the court directs you not to consider and anything which the court orders stricken from the record.

The opening statements of attorneys are not evidence. Also, you must not consider as evidence any statement or remark or argument by any of the attorneys addressed to another attorney or to the court. However, the attorneys may enter into stipulations of fact. These stipulations become part of the evidence and are to be considered by you as such.

MAI-CR 3d 300.06 is not numbered nor is it physically given to the jury at the conclusion of the evidence. Instruction No. 1 and Instruction No. 2 are numbered and are given to the jury with the other written instructions to be used in the jury's deliberations, but are not reread to the jury when the other jury instructions are read prior to the jury's deliberations.

Here, the trial court read MAI-CR 3d 300.06 and told the jury that it was going to read Instructions No. 1 and No. 2 prior to opening statements, but then only read Instruction No. 1 before allowing the State to make its opening statement. Both the State and Miller gave opening statements without any objections being made during either one. Immediately after the conclusion of opening statements and before the presentation of any evidence, the court recognized that it had failed to read Instruction No. 2 and so it read that instruction to the jury. Neither party objected nor is there any dispute that the jury was given both Instructions No. 1 and No. 2 in writing to take back to the jury room for deliberations. We find no plain error under these circumstances.

While Instruction No. 2 should have been read prior to opening statements, plain error did not occur because the jury was provided sufficient guidance by the reading of MAI-CR 3d 300.06 and Instruction No. 1 prior to opening statements, by the reading of Instruction No. 2 immediately after opening statements and before the presentation of any evidence, and by the court providing the jury with copies of Instructions No. 1 and No. 2 in writing before the jury left to deliberate. See *State v. Williams*, 97 S.W.3d 462, 472 (Mo.banc 2003) (finding that while the failure to give the jury a written instruction on notetaking was erroneous, it did not constitute plain error because the court read the proper instruction to the jury); *State v. Deck*, 303 S.W.3d 527, 547 (Mo.banc 2010) (finding that the trial court's failure to read the mandatory instruction concerning veniremembers' views on punishment, MAI-CR 3d 300.03A, did not result in plain error because the

information that would have been conveyed to the veniremembers by the instruction was otherwise provided).

Indeed, when the court read MAI-CR 3d 300.06, it instructed the jury that the attorney for the state must make an opening statement outlining what the attorney expects the state's evidence will be, and that evidence will then be introduced. Further, Instruction No. 1 informed the jury that it was the jury's duty to determine the facts only from the evidence and the reasonable inferences from that evidence, and that the case must be decided only by the evidence presented and the instructions given by the court. While the court did not read Instruction No. 2's language that the opening statements of attorney are not evidence until immediately after opening statements were given, the jury was provided sufficient guidance by MAI-CR 3d 300.06 and Instruction No. 1 that the opening statements were not evidence, especially since Instruction No. 2 was then given immediately following the opening statements. Furthermore, no objections were made during either party's opening statement so Instruction No. 2's directions regarding objections were not pertinent. Accordingly, we find no plain error occurred.

Miller also takes issue with the court's alleged failure to read MAI-CR 3d 302.06. MAI- CR 3d 302.06 provides as follows:

The attorneys will now have the opportunity of arguing the case to you. Their arguments are intended to help you in understanding the evidence and applying the law, but they are not evidence.

You will bear in mind that it is your duty to be governed in your deliberations by the evidence as you remember it, the reasonable inferences which you believe should be drawn therefrom, and the law as given in these instructions.

It is your duty, and yours alone, to render such verdict under the law and the evidence as in your reason and conscience is true and just.

The state's attorney must open the argument. The defendant's attorney may then argue the case. The state's attorney may then reply. No further argument is permitted by either side.

This instruction must be given in every case and will be the last instruction which the court reads to the jury before it retires for its deliberations. *Id.*, Notes on Use.

According to the transcript, at the close of the evidence but before closing arguments were made, the court stated that it was going to read to the jury the remainder of the instructions. The transcript then indicates that instructions two through thirteen, "inclusive," were read to the jury. MAI-CR 3d 302.06 was numbered as Instruction No. 14. Miller contends that Instruction No. 14 was not read to the jury, while the State argues that this was merely an error in the transcription. There is no dispute, however, that Instructions No. 1 through 14 were provided to the jury in writing before they went into deliberations. Because the jury was provided with Instruction No. 14 in writing, we find that the jury was provided sufficient guidance regardless of whether Instruction No. 14 was read and no plain error lies. See *Williams*, 97 S.W.3d at 472*; Deck*, 303 S.W.3d at 547. Point denied.

ECF 28-1.  Given the state court's finding that no plain error resulted in the

manner in which the jury was instructed, Miller cannot meet the difficult burden of

showing a "fundamental defect which inherently results in a complete miscarriage

of justice," *Williams*, 736 F.2d at 1267, a burden the Supreme Court has

acknowledged "is even *greater* than the showing required to establish plain error

on direct appeal."  *Henderson,* 431 U.S. at 154 (emphasis supplied).[4]   Ground

Four of Miller's habeas petition is denied.

E.      Ground Five: Denial of Motion to Suppress

The entirety of Miller's Fifth Ground is alleged as follows:

---

[4] Because this claim is not cognizable and meritless, the Court does not address the issue of whether the Missouri court's plain error analysis cured any procedural default of this claim.

The trial court erred and abused its discretion in overruling my motion to suppress physical evidence obtained from the warrantless seizure of my SUV, and in admitting the evidence obtained from that search (State's Exhibit 32), over defense counsel's objection because the SUV was parked on a parking pad at the rear of the residence, and no exigent circumstances justified the warrantless seizure of my SUV, in that: at the time of the seizure, I, the co-owner of the SUV, Chantay Clark, and the person who had possession of the sole key to the SUV, Jennifer Miller, were in custody, and as a consequence, the SUV was not readily mobile and there was no chance any evidence inside the SUV would be destroyed or hidden.

ECF 8 at 19.  Miller makes no additional arguments in support of this claim in his

traverse, contending that "the substance of Claim 5 was adequately addressed in

the underlying petition. It would serve no useful purpose to rehash these arguments

here."  ECF 23 at 25-26.  The Missouri Court of Appeals rejected this claim on

direct appeal as follows:

Miller contends that the trial court erred in denying his motion to suppress evidence obtained from the warrantless seizure of his automobile. Specifically, Miller complains that paperwork obtained from the vehicle showing that he and Clark purchased the vehicle should not have been admissible at trial because the vehicle was unreasonably seized from his residence when it was towed away the morning of his arrest before a search warrant had been obtained. Miller does not dispute that the search warrant and subsequent search of the vehicle that afternoon were proper, but only that the vehicle never should have been towed from his residence in the first place.

We review a trial court's ruling on a motion to suppress in the light most favorable to the ruling. *State v. Schroeder*, 330 S.W.3d 468, 472 (Mo.banc 2011). We defer to the trial court's determinations of credibility. *Id.* The inquiry is limited to determining whether the decision is supported by substantial evidence. *Id.* We will reverse only if the trial court's decision is clearly erroneous. *State v. Oliver*, 293 S.W.3d 437, 442 (Mo. banc 2009).

We will consider evidence presented at a pre-trial hearing as well as any additional evidence presented at trial. *Id.*

The Fourth Amendment to the United States Constitution guarantees citizens the right to be free from "unreasonable searches and seizures" and provides that no warrants shall issue except upon probable cause. U.S. CONST. amend. IV. Evidence discovered in violation of the Fourth Amendment must be excluded as fruit of the poisonous tree. *Oliver*, 293 S.W.3d at 442. Whether conduct violates the Fourth Amendment is an issue of law that we review de novo. *Schroeder*, 330 S.W.3d at 472.

Here, the record indicates that several witnesses heard gunshots and observed the shooter flee in a white SUV with running board lights. The police also discovered from Victim's sister that Victim had been in an argument that night with Miller and when they drove past Miller's house the police identified a white SUV on Miller's parking pad that two witnesses identified as the vehicle that fled the crime scene. Around the time the second of the two witnesses was identifying the vehicle to the police, Miller and all persons inside his home were arrested. The police then had the vehicle towed from Miller's residence but waited to search it until after they obtained a search warrant. The record is unclear as to what time the vehicle was towed and what time the search took place, although the warrant was issued that afternoon around 3 p.m.

From this evidence, we cannot say that the trial court clearly erred in denying Miller's motion to suppress. The police had probable cause to believe that the vehicle was involved in the shooting that occurred just hours before and that justified the warrantless seizure of the vehicle. See *State v. Weaver*, 912 S.W.2d 499, 521 (Mo. banc 1995) (finding the warrantless seizure of the vehicle was justified when the vehicle was seized at the scene of the murder and was apparently used by defendant as transportation to the crime scene). It was reasonable for the police to seize the vehicle to avoid it being moved or tampered with and to wait to search it until after they obtained a search warrant. Point denied.

ECF 28-1.

Miller does not argue that he was not given a full and fair opportunity to litigate his claim before the state court.  Accordingly, it is not cognizable in habeas proceedings: "We conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (U.S. 1976); *Chavez v. Weber*, 497 F.3d 796, 802 (8th Cir. 2007) ("To show that he was not afforded an opportunity for full and fair litigation of his claim, [Miller] would have to show that the State provided no corrective procedures at all to address the alleged Fourth Amendment violation or that the State provided a corrective mechanism, but he was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.").

Even if it were cognizable, in denying this ground on appeal the Missouri Court of Appeals correctly identified the governing legal standards, and its determination was not an incorrect or unreasonable application of Supreme Court precedent.  *See* 28 U.S.C. § 2254(d)(1).  As the appellate court's determination also did not involve an unreasonable determination of the facts in light of the evidence presented in the  state court proceedings, *see* 28 U.S.C. § 2254(d)(2), the decision is entitled to deference.   Ground Five of Miller's habeas petition is denied.

F.     Ground Six: Counsel's Failure to Object to the Trial Court's Failure to Read
       Jury Instructions

       In Ground Six, Miller alleges that his counsel provided ineffective assistance

by failing to object to the trial court's failure to read the jury instructions in a

manner consistent with the Missouri Approved Instructions.

       The Missouri Court of Appeals considered and rejected this claim on appeal

of the denial of post-conviction relief as follows:

> To establish ineffective assistance of counsel, a movant must prove "by a
> preponderance of the evidence that (1) trial counsel failed to exercise the
> level of skill and diligence that reasonably competent counsel would
> exercise in a similar situation and (2) the movant was
> prejudiced by that failure." *Hopkins v. State*, 519 S.W.3d 433, 436 (Mo.
> banc 2017); *Strickland v. Washington,* 466 U.S. 668, 687 (1984). If a
> movant fails to establish either the performance or the prejudice prong, "then
> we need not consider the other and the claim of ineffective assistance must
> fail." *Roberts v. State*, 535 S.W.3d 789, 797 (Mo. App. E.D. 2017).
>
> *Strickland*'s first prong requires a movant to overcome the strong
> presumption that trial counsel's conduct was reasonable and effective by
> showing "specific acts or omissions of counsel that, in light of all the
> circumstances, fell outside the wide range of professional competent
> assistance." *McGuire,* 523 S.W.3d at 563 (quoting *Zink v. State*, 278 S.W.3d
> 170, 176 (Mo. banc 2009)). To satisfy the prejudice prong of the *Strickland*
> test, a movant must show there is a "reasonable probability that, but for
> counsel's unprofessional errors, the result of the proceeding would have
> been different." *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006);
> *Strickland*, 466 U.S. at 694. A reasonable probability exists if there is "a
> probability sufficient to undermine confidence in the outcome." *Anderson*,
> 196 S.W.3d at 33–34 (quoting *Strickland*, 466 U.S. at 694).
>
> Movant's points one and three concern claims which the motion court
> denied without an evidentiary hearing. However, "[a]n evidentiary hearing is
> not required with every Rule 29.15 motion." *Barnes v. State*, 506 S.W.3d
> 407, 410 (Mo. App. E.D. 2016); Rule 29.15(h). To be entitled to an

evidentiary hearing on a motion for post-conviction relief, a movant must: "(1) allege facts, not conclusions, that, if true, would warrant relief; (2) these facts must raise matters not refuted by the record and files in the case; and (3) the matters complained of must have resulted in prejudice to the movant." *Id.* This Court "will not draw factual inferences or implications in a Rule 29.15 motion from bare conclusions or from a prayer for relief." *Roberts*, 535 S.W.3d at 796.

In his first point on appeal, Movant contends the motion court clearly erred in denying his motion for post-conviction relief without an evidentiary hearing because he alleged facts showing trial counsel was ineffective for failing to object when the trial court failed to properly read Instruction No. 2 and Instruction No. 14 to the jury.

It is well established that issues decided on direct appeal may not be relitigated in a post- conviction relief motion under a theory of ineffective assistance of counsel, and a motion for post-conviction relief cannot be used to obtain review of matters which were or should have been raised on direct appeal. *Voss v. State*, 570 S.W.3d 184, 197 (Mo. App. E.D. 2019). This Court recognizes the plain error test and the *Stickland* tests are not equivalents; however, the "theoretical difference in the two standards of review will seldom cause a court to grant post- conviction relief after it has denied relief on direct appeal, for, in most cases, an error that is not outcome-determinative on direct appeal will also fail to meet the *Strickland* test." *Deck v. State*, 68 S.W.3d 418, 427-28 (Mo. banc 2002).

At trial, the court provided the jury with Instruction No. 2 and Instruction No. 14. Instruction No. 2 provided the jury with guidance regarding objections, informed the jury that "opening statements of attorneys are not evidence," and discussed stipulations of fact that could be considered as evidence. The trial court recognized it had not read the instruction prior to opening statements. However, there is no dispute that Instruction No. 2 was read to the jury immediately after opening statements, before any introduction of evidence.

Instruction No. 14 concerned the order in which each party presented their case and explained to the jury that their deliberations were governed "by the evidence as you remember it, the reasonable inferences which you believe should be drawn therefrom, and the law as given in these instructions." Instruction No. 14 was not read out loud. However, there is no dispute that

Instructions No. 1 through 14 were provided to the jury in writing before the jury went into deliberations.

On direct appeal, Miller challenged the trial court's failure to read the two mandatory instructions to the jury, but conceded he did not preserve this point of error. However, our court reviewed the issue for plain error and found none. *See State v. Miller*, 508 S.W.3d 170 (Mo. App. E.D. 2016). In the present post-conviction relief case, Movant now claims trial counsel was ineffective for failing to object to the trial court's failure to read Instruction No. 2 and Instructions No. 14, which is no different than the argument he made on direct appeal. However, "Movant cannot use his post-conviction proceeding as a vehicle to obtain a second appellate review of matters raised on direct appeal." *Voss*, 570 S.W.3d at 198. As a result, Movant is not entitled to an evidentiary hearing where the record conclusively shows Movant is not entitled to relief. Rule 29.05(h).

Accordingly, the motion court did not clearly err in denying Movant's claim for post- conviction relief without an evidentiary hearing. Point one is denied.

ECF 14-12.

Miller's ineffective assistance of trial counsel claims are governed by

*Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established a two-

prong test to determine when counsel's ineffective performance violates the Sixth

Amendment. On the first prong, petitioner "must show that counsel's performance

was deficient. This requires showing that counsel made errors so serious that

counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."

*Id.* at 687. The second prong requires petitioner to "show that the deficient

performance prejudiced the defense." *Id.* To demonstrate prejudice, a petitioner

must show "a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  In applying *Strickland's* two prongs, the Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," *id.* at 689, and that reviewing courts should indulge a strong presumption that counsel's actions fell within the "wide range of professionally competent assistance." *Id.* at 690.

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)).  This means that Miller must do more than "show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002) (cleaned up).  "Rather, he must show that the [Missouri Court of Appeals] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

The Missouri Court of Appeal's decision is not an unreasonable application of *Strickland* or an unreasonable determination of the facts.  "Counsel's failure to advance a meritless argument cannot constitute ineffective assistance." *Rodriguez v. U.S.*, 17 F.3d 225, 226 (8th Cir. 1994).  Here, the Missouri Court of Appeals reasonably concluded that Miller could not demonstrate that counsel's performance

was constitutionally deficient or that Miller was prejudiced as a result because it

had already rejected the underlying claim on direct appeal.

For these reasons, the Missouri Court of Appeal's decision to deny relief on

Mitchell's ineffective assistance of counsel claim is entitled to deference, and

Ground Six of Mitchell's habeas petition is denied.

G.     Ground Seven: Counsel's Failure to Present Alibi Witness

In his seventh ground for relief, Miller contends that he received ineffective

assistance of trial counsel because counsel did not present Chantay Clark as an

alibi witness.  The Missouri Court of Appeals rejected this claim on post-

conviction appeal as follows:

> In his second point on appeal, Movant argues the motion court clearly erred
> in denying his post-conviction relief motion after an evidentiary hearing
> because trial counsel was ineffective for failing to call Clark as an alibi
> witness.
>
> Allegations in a post-conviction motion are not self-proving; therefore, a
> movant bears the burden of proving his claims of ineffective assistance by a
> preponderance of the evidence *Gittemeier v. State*, 527 S.W.3d 64, 71 (Mo.
> banc 2017); Rule 29.15(i). "Failure to present evidence at a hearing in
> support of factual claims in a post-conviction motion constitutes
> abandonment of that claim." *Gittemeier*, 527 S.W.3d at 71.
>
> To prevail on a claim of ineffective assistance of counsel due to trial
> counsel's failure to call a witness, movant must show what the witness
> would have testified to and that the witness's testimony would have aided
> the defense. *Hilliard v. State*, 550 S.W.3d 130, 134 (Mo. App. E.D. 2018).
> Unless a movant establishes otherwise, trial counsel's decision not to call a
> witness is presumptively a matter of reasonable trial strategy and will not
> support a claim of ineffective assistance of counsel. *Jones v. State*, 519
> S.W.3d 879, 885 (Mo. App. E.D. 2017).

The record demonstrates Movant was granted an evidentiary hearing on this claim but Clark, Movant's alleged alibi witness, failed to appear or testify. In fact, the only evidence presented was trial counsel's testimony from his notes at the time he investigated the case, which indicated that Movant had given him Clark's name as a potential alibi witness. However, after investigating and interviewing witnesses, he consulted with Movant and determined "the theory of defense in the case was a [misidentification] from the witness, combined with a lack of direct proof from the State that they did not meet their burden." Thus, the hearing record does not establish trial counsel inadequately investigated potential alibi witnesses nor does it indicate Clark would have testified and her testimony would have aided the defense. *See Hilliard,* 550 S.W.3d at 134.

Movant's failure to present evidence of an alleged alibi at a post-conviction evidentiary hearing constitutes the abandonment of his claim that trial counsel was ineffective for failing to call the alleged witness at trial or produce her testimony. *See Barnes v. State*, 334 S.W.3d 717, 721 (Mo. App. E.D. 2011) (holding movant abandoned his post-conviction claim that trial counsel provided ineffective assistance of counsel by failing to call his girlfriend as an alibi witness, where defendant failed to present any evidence supporting his claim of girlfriend's value of her testimony."); *State v. White*, 913 S.W.2d 435, 438 (Mo. App. E.D. 1996) (finding movant abandoned claim that trial counsel provided ineffective assistance by failing to call alibi witness, where defendant failed to present evidence from witness at post-conviction relief proceeding.).

Therefore, we find the motion court did not clearly err in denying Movant's Rule 29.15 motion for post-conviction relief. Point two is denied.

ECF 14-12.  In support of this claim, Miller attaches an affidavit from Clark to his

traverse, claiming that she would have testified at trial if called and would have

provided him with an alibi for the time of the shooting.  ECF 23-3.

The Supreme Court recently held that under 28 U.S.C. § 2254(e)(2), "a

federal habeas court may not conduct an evidentiary hearing or otherwise consider

evidence beyond the state-court record based on ineffective assistance of state postconviction counsel." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1734 (2022).  Instead, "a federal court may order an evidentiary hearing or otherwise expand the state-court record only if the prisoner can satisfy § 2254(e)(2)'s stringent requirements." *Id.* at 1735.  The two "narrow exceptions" are for claims based on (I) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable;" or (ii) "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(i), (ii).

Miller makes no argument that he can satisfy the narrow requirements of § 2254(e)(2), and the Court finds he cannot do so.  There is no argument of a new rule of constitutional law at issue here, and the factual predicate on which Ground Seven is based was previously discovered and litigated during post-conviction proceedings.  This is fatal to his request for the Court to consider the affidavit or otherwise hold an evidentiary hearing in this case.

The Missouri Court of Appeal's decision is not an unreasonable application of *Strickland*.  "Under *Strickland*, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments

support the limitations on investigation.'" *Hinton v. Alabama*, 571 U.S. 263, 274
(2014) (quoting *Strickland*, 466 U.S. at 690–91).  "In other words, counsel has a
duty to make reasonable investigations or to make a reasonable decision that
makes particular investigations unnecessary." *Id.*  (quoting *Strickland*, 466 U.S. at
691).  Given the state court's determination that trial counsel investigated Clark
and then concluded that her testimony would not have aided the defense, Miller
cannot overcome the strong presumption that counsel acted reasonably, especially
under the doubly deferential standard of the AEDPA.  Because the Missouri Court
of Appeals' decision was not contrary to, or an unreasonable application of,
*Strickland,* it is entitled to deference.  Ground Seven of Miller's habeas petition is
denied.

H.      Ground Eight: Counsel's Failure to Object to Closing Argument

        In Ground Eight, Miller contends that trial counsel was ineffective for
failing to object to the portion of the prosecutor's closing argument stating that the
jury must acquit on the higher charge before considering the lesser included
offense charge.  The Missouri Court of Appeals denied this claim on post-
conviction review as follows:

>       In his third point on appeal, Movant argues the motion court clearly erred in
>       denying his post-conviction relief motion without an evidentiary hearing
>       because he alleged facts showing trial counsel was ineffective for failing to
>       object to the State's improper statement that the jury must unanimously
>       acquit Movant of murder in the first degree before considering the lesser-
>       included offense.

To prevail on an ineffective assistance claim based on defense counsel's failure to object to statements made by prosecutor during closing arguments, a movant must show the failure to object was not strategic, and that the failure to object was prejudicial. *Kohlheim v. State*, 482 S.W.3d 851 (Mo. App. E.D. 2016). The reviewing court presumes the lack of objection was sound trial strategy unless the movant proves otherwise. *Marshall v. State*, 567 S.W.3d 283, 293 (Mo. App. E.D. 2019). For a movant to obtain post-conviction relief based on a failure to object, the failure "must have been of such character as to deprive the defendant substantially of his right to a fair trial." *Anderson v. State*, 564 S.W.3d 592, 614 (Mo. banc 2018). "The mere failure to make objections does not constitute ineffective assistance of counsel." *Dorsey v. State*, 448 S.W.3d 276, 289 (Mo. banc 2014) (quoting *Ervin v. State*, 80 S.W.3d 817, 822 (Mo. banc 2002)).

Additionally, "[c]losing argument is designed to advise the jury and opposing counsel of each party's position and to advocate to the jury what that party believes the jury should do." *State v. McFadden*, 369 S.W.3d 727, 747 (Mo. banc 2012). When interpreting a closing argument in the context of a claim of an improper comment, the entire record is considered, not just an isolated segment. *Id*.

Missouri's instructions on lesser-included offenses do not require that the defendant first be acquitted of the greater offense before the jury can consider the lesser offense. *Tisius v. State*, 183 S.W.3d 207, 217 (Mo. banc 2006). Rather, they provide that a jury is allowed to consider the lesser-included offense if they "do not find the defendant guilty" of the greater offense. *Id*.

During closing argument, the prosecutor reminded the jury of the charge against Movant and outlined the instructions they would be given during deliberations:

The defendant is charged with First Degree Murder. You also got another instruction on Second Degree Murder. But if you'll notice the language at the beginning of that second degree murder one, it basically says that if all 12 of you, you know, if you don't find him guilty of first degree murder then you consider second degree murder, okay?

The prosecutor then explained the instructions provided for first-degree murder and second-degree murder:

So as you're up there deliberating the only way you even get to thinking about murder second is if all 12 of you agree or if all 12 of you cannot agree that the fact that the defendant hunted him down and arranged for a getaway vehicle and shot him six times, if all of you can't agree that somehow that doesn't show deliberation that's how you get to murder second. And I would submit to you if you reach a verdict in this case murder second [isn't] the right one. Not even close.

The prosecutor also explained that the element that distinguishes first- and second-degree murder is the element of deliberation. Then, he proceeded to summarize the evidence presented by the State to satisfy the element of deliberation. The jury was instructed on first-degree murder and the lesser-included offense of second-degree murder. After deliberation, the jury found Movant guilty of first-degree murder as provided by the written instruction.

In his point on appeal, Movant claims "trial counsel failed to object to improper argument by the State that the jury must *unanimously acquit* Appellant of murder in the first degree before considering the lesser included offense" (emphasis added). However, the record shows that the State's statements were consistent with the written instructions provided to the jury.

Movant contends that the prosecutor's statement was an acquittal-first argument; however, a reading of the record shows that the State provided the jury with guidance as to how they could consider the lesser-included offense of second-degree murder. "[A]n acquittal first argument is a misstatement of the law and can constitute reversible error." *Tisius*, 183 S.W.3d at 217.

In *Tisius*, the Supreme Court of Missouri held that trial counsel's closing statement was not improper when instructing the jury on the lesser-included offense of second-degree murder. *Id*. at 216–17. During his closing argument, the prosecutor in *Tisius* made the following statement:

You have to in order to commit murder in the first degree have done something more. And that was deliberation. That's the only difference between murder in the second degree of one submission than the other, murder in the second. But keep in mind if you find that he did the three elements he shot these two men, he knew that he was doing was likely to

kill. And he did it after deliberation, you don't even have to consider the rest of it. You look at murder second if and only if you do not believe that we proved those things beyond a reasonable doubt. But we did.

*Id*. at 216.

The argument made in *Tisius* closely mirrors the prosecutor's argument in the present case. Here, the prosecutor explained "if you don't *find him guilty* of first degree murder then *you consider* second degree murder  " (emphasis added). Similar to *Tisius*, the State's argument was not "acquittal first" argument and was consistent with the instruction provided to the jury.

Additionally, the jury instructions informed the jury that the parties' arguments were intended to help them "in understanding the evidence and applying the law, but they are not evidence." Instruction No. 5 instructed the jury on first-degree murder and Instruction No. 7 specifically instructed the jury "if you *do not* find the defendant guilty of murder in the first degree under Instruction No. 5, you *must consider* whether he is guilty of murder in the second degree." (emphasis added).

Any objection made during the prosecutor's closing argument would have lacked merit. Therefore, trial counsel was not ineffective for failing to make non-meritorious objection. *See Zink*, 278 S.W.3d at 188. Movant failed to establish trial counsel's performance was deficient, thus we need not analyze the prejudice prong. *See Roberts*, 535 S.W.3d at 797. Accordingly, because counsel was not ineffective for failing to make a meritless objection, the motion court did not clearly err in denying Movant's request for post-conviction relief without an evidentiary hearing. Point three is denied.

ECF 14-12.  The Missouri Court of Appeal's decision is not an unreasonable

application of *Strickland*.  Given the state court's determination that the

prosecutor's closing argument was not improper, Miller cannot overcome the

strong presumption that counsel acted reasonably in failing to object, especially

under the doubly deferential standard of the AEDPA.  *See Rodriguez.*, 17 F.3d at

226  (failure to make meritless objection cannot constitute ineffective assistance).

Because the Missouri Court of Appeals' decision was not contrary to, or an
unreasonable application of, *Strickland,* it is entitled to deference.  Ground Eight of
Miller's habeas petition is denied.

I.      Ground Nine: Counsel's Cumulative Errors

Ground Nine of Miller's claim is set forth as follows:

> Trial counsel was ineffective in failing to be an effective advocate on my
> behalf. Counsel conducted minimal pretrial investigation, was unprepared
> for trial, and called limited witnesses for the defense. The cumulative effect
> of counsel's ineffectiveness in this regard was extremely prejudicial to the
> outcome of my trial and clearly violated my Sixth and Fourteenth
> Amendment rights.

ECF 8.  Respondent contends that this allegation is too broad and general to
state a claim under *Strickland v. Washington,* as this type of cumulative error
claim fails to state a claim for habeas relief.

"[C]umulative error does not call for habeas relief, as each habeas claim
must stand or fall on its own." *Girtman v. Lockhart*, 942 F.2d 468, 475 (8th Cir.
1991) (quoting *Scott v. Jones*, 915 F.2d 1188, 1191 (8th Cir. 1990)); *see also
Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006).  As such, Miller's broad
allegations of cumulative error do not state a cognizable claim under *Strickland*.
*See Forrest v. Steele*, 764 F.3d 848, 860 (8th Cir. 2014) (Supreme Court
precedent does not obligate courts "to bundle individual claims of attorney error
and determine whether the body of these alleged faults, en masse, overcome

*Strickland*'s presumption of reasonableness"); *see also Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Errors that are not unconstitutional individually cannot be added together to create a constitutional violation. Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief." (cleaned up).  No Supreme Court decision "purport[s] to aggregate each discrete and potentially unrelated claim of ineffectiveness into a single performance inquiry." *Forrest*, 764 F.3d at 861. Rather, "'[a] fair assessment of attorney performance requires that every effort be made . . . to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"  *Id.* (quoting *Strickland*, 466 at 689).  Ground Nine of Miller's habeas petition is denied.

<u>Certificate of Appealability</u>

When a petitioner is denied a writ of habeas corpus under 28 U.S.C. § 2254, the petitioner may not appeal unless granted a certificate of appealability.  28 U.S.C. § 2253(c)(1)(A).  To be entitled to a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right. § 2253(c)(2); *see Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).  A showing is substantial when the issues raised are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further

proceedings.  *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).  Because I find none of these to be the case, I will deny a certificate of appealability on all claims.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Michael Miller for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [1] is denied as moot.

**IT IS FURTHER ORDERED** that the amended petition of Michael Miller for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [8] is denied.

**IT IS FURTHER ORDERED** that the petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not grant a certificate of appealability.

A separate judgment in accordance with the Memorandum and Order is entered this same date.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 16th day of June, 2023.